---

## *In re* MONROE'S WILL.

### *In re* GRENNELL.

*(Surrogate's Court, New York County. September, 1890.)*

**1. WILLS—PROCUREMENT BY UNDUE INFLUENCE.**
    Testator, when more than 72 years old and very feeble, executed a will of all his property in favor of proponent, a stranger in blood. Four years previously testator showed such mental weakness as disqualified him as a witness in a legal proceeding. Testator had formerly made a will in favor of his wife, for whom he had always shown great affection, and his niece. He had never disagreed with either of them, and no cause for changing his will appeared, nor had he expressed any intention of changing it. The execution of the will in favor of proponent was superintended by proponent, who occupied very close confidential relations to testator, and it recited that it was to reward proponent for his services, but there was no proof of any services. *Held*, that such will was procured by undue influence.

**2. PRIVILEGED COMMUNICATIONS—ATTORNEY AND CLIENT.**
    Advice given by an attorney for which no compensation is asked or expected, and none given, is not a privileged communication.

Application by George C. Grennell for the probate of the alleged will of Thomas J. Monroe, deceased.    Probate denied.

*Erastus F. Brown*, for proponent.  *Booraem, Hamilton & Beckett*, for contestant Susie M. Page.    *Charles A. Flammer*, for contestants Charles C. Monroe and others.    *Knevals & Perry*, for Edward W. Knevals, temporary administrator.

RANSOM, S.    It is impossible for me to take the time from other equally important official work that would be necessary to write my review of the testimony taken in this case by an assistant to the surrogate.    The record is enormous, and the printed briefs and supplements thereto handed up contain nearly a thousand pages.    The oral argument consumed seven entire days, and was followed by me with great care and the taking of copious notes. The industry and ability of contestants' counsel have been extraordinary. They have signally aided me in my efforts to rightly decide the questions involved.    The proponent's counsel has labored indefatigably, and has displayed a determination to leave nothing unsaid or undone which might, in his view, properly aid his cause.    He was his client's chief witness, and his testimony is saturated with the bias, prejudice, and zeal in his client's behalf, justifiable in counsel, but unworthy in a witness.    I have reviewed the case since the argument with care, and have given close study of the briefs. The objections to probate of the paper in contest are all those usually made to put in issue the *factum* of a will.    The allegation of Susie Monroe Page, by her special guardian and leading counsel for the contestants, that the paper in contest "was obtained, and the execution, re-execution, or republication thereof procured and secured, by fraud, circumvention, and undue influence practiced upon decedent by one George Grennell, the sole surviving legatee and devisee, executor, trustee, and sole beneficiary under said alleged last will and testament, or some other person or persons associated with said Grennell or otherwise, whose names are at present unknown to this contestant," presents the question which seemed to counsel on both sides to be the only one in the case, and I agree.    The formalities required by law for the due execution of wills were observed.    For several years before the execution of the paper in contest the decedent, an old man, had been in failing health, and for some months immediately preceding the execution of the paper he was broken down, could not wait upon himself, could not dress himself mornings, could not prepare his food at the table, and was so feeble that he could not go upstairs unless a person went up behind him.    He was not allowed to go down cellar, because his attendant was afraid he would fall.    His attendant, a woman, after August, 1886, stayed and put him to bed every night, and sometimes stayed as late as 2 o'clock in the morning.    These duties were performed by this serving woman until he died, January 15, 1889, in his seventy-fourth year.    Credible evidence was given that as far back as 1884 the decedent betrayed such mental weakness and decay as to unfit him for use as a witness in a legal proceeding.    He was married, and outlived his wife but a few months, who was at the time he executed the paper in question seriously ill and very near to death, as he and his friend, the proponent, knew, and she died July 20, 1888, but a few weeks after the pretended re-execution by him of the paper in question.    She had been living apart from him for some months with her niece in Williamsburg, with his consent; her absence being due solely to an attack of sickness while on a visit to this niece, which alone prevented her return, and such sickness resulted in her death.    During all this time her husband displayed his love for her in the natural way of solicitude and providing support and maintenance.    His own poor health prevented him from visiting her.    In 1873 he made a will in favor of his wife and his niece. This will was made in triplicate, and one part was given by him to this niece,

Mrs. Blaisdell. This will was consistent with his affections and inclinations, and was pleasing to his wife, and he never disclosed to either of them any intention to change it, nor did there ever arise subsequent to its execution any controversy between him and them. His love for his wife lasted through life, and in his last days he expressed the wish to be buried by her side. No satisfactory reason has been given for his change of testamentary intent. The expressions in the paper in contest, to the effect that the entire estate should go to proponent as a reward for his services to decedent, are not sustained by proof of such services. The proponent is a stranger to the blood of the decedent, and it is not natural that he should have been selected by him as the person to receive his large fortune. The ties of blood are not usually disregarded, and whenever they are the act is deemed unnatural, and a suspicion is cast upon the favored stranger. The paper in contest was practically drawn by the proponent himself, and its execution was superintended by him at a time when he had obtained complete dominion over the decedent, and sustained to him the closest of confidential relations, and was, in legal meaning, holding a fiduciary relation to him. The preparation of the contested paper by proponent's attorney and witness, at his request, from a "memorandum" or "draft" furnished by him, is fairly established. The attorney swears that he returned this "memo" or "draft" to his client, and the client swears that he did not do so. Between them this important paper has disappeared, and no satisfactory account of it has been given, although on the argument proponent's attorney affirmed that the proponent, who was then present in court, could answer fully in regard to it. I gave proponent the opportunity to go upon the stand then and testify to me on the subject, but he did not embrace it. The charge made against the proponent is very serious, and one would expect him to meet it square in the face. In such a case the fullest investigation should be courted, and all technical rules of evidence might well be waived. Any other course, by a person charged with having defrauded a feeble old man of his free will to his own enormous advantage, rightly casts suspicion upon him, and strengthens the legal presumption that he is guilty. The professional obligation of an attorney to keep his client's confidence is grounded on public policy and good morals, and is made imperative by statute; but in a case of this kind the statute should be construed with liberality. I am not at all satisfied that the learned assistant to the surrogate, in some of his rulings, was free from legal error in sustaining the objections made on behalf of proponent, who was personally present, to the evidence of the witness who claimed to be his attorney because he had been consulted by him on the street and at the lunch table about drawing a will for decedent. Sidewalk advice from attorneys upon legal questions, for which no compensation is asked or expected, and none given except a luncheon, should not be regarded as a privileged communication.

Whatever may be thought by others on the subject, it seems to me that in a case like this there is a higher law that should have compelled the proponent to promptly waive any privilege, and thus let the whole truth be known. Any other course on his part invites and justifies unfavorable comment. At this place I remark that proponent earnestly charged this attorney not to betray him to decedent. If all was frank and fair, why do this? This attorney had been for more than a generation the trusted counselor of decedent, and he drew his will of 1873. He had also been the attorney of proponent for many years. If all was open and above board in regard to this pretended will, why was he, apparently, excluded from decedent's counsels, and a comparative stranger employed by proponent at his own expense? When a charge such as that made against this proponent is under impartial investigation, the proponent should, it seems to me, display the utmost frankness. In this case such has not been his conduct. The evidence convinces me that

he early formed the purpose of procuring from decedent a will in his own favor, and to accomplish his design he bent every energy, resorted to artifice and cunning, conspiracy and fraud. For such purpose he traded upon the weaknesses, both mental and physical, of the decedent, and insidiously intruded his own will into his enfeebled mind, flattered his more than childish vanity and humored his caprices and eccentricities, and thus accomplished his object. The kind of undue influence which the proponent exercised over this decedent is aptly described by the court of appeals in *Marx v. McGlynn,* 88 N.Y. 357. "That is, where the mind and the will of the testator have been overpowered and subjected to the will of another, so that while the testator willingly and intelligently executed a will, yet it really was the will of another, induced by the overpowering influence exercised upon a weak or impaired mind. Such a will may be procured by working upon the fears or the hopes of a weak-minded person; by artful and cunning contrivances; by constant pressure, persuasion, and effort, so that the mind of the testator is not left free to act intelligently and understandingly." In a case like this the law presumes that undue influence has been used, and it is incumbent upon the person charged with using it to satisfy the court that he did not. This rule of decision commends itself to one's notions of natural justice, and to the lay mind it is wholesome doctrine. The books abound in cases affirming this rule, and on several occasions I have called attention to them by name. It does not seem necessary to do so again. It is needless to say that the proponent has failed to satisfy me that the paper in contest is not really his own will, procured by his undue influence over the decedent. The paper propounded must be rejected. The costs of the proceeding are charged against the proponent personally.